# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**EVEREST CROSSING, LLC,**<br><br>                       **Debtor** | **Chapter 11**<br>**Case No. 09-16664-FJB** |

**MEMORANDUM OF DECISION ON
MOTION OF CRIMSON GALERIA LIMITED PARTNERSHIP
FOR RELIEF FROM THE AUTOMATIC STAY**

       The Debtor in this Chapter 11 proceeding, Everest Crossing, LLC, operates a restaurant known as OM Restaurant in the Harvard Square section of Cambridge, Massachusetts. The restaurant occupies leased space in the Crimson Galleria pursuant to a lease dated March 11, 2005 (as amended) (the "Lease"), 57 JFK Street, Cambridge (the "Premises"). By this motion, the landlord, Crimson Galeria Limited Partnership (the"Landlord"), moves for relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to permit it to exercise its rights under the Lease, including to proceed to state court to evict the Debtor for non-payment of rent and other defaults under the lease. Central to the Landlord's motion is its contention that it terminated the Lease by Notice of Termination served on July 14, 2009, which was one day before the Debtor filed the chapter 11 petition on July 15, 2009. Based on this contention, the Landlord says it filed the motion for relief "out of an abundance of caution," because, in the Landlord's view, the stay was not in place given its prepetition termination of the Lease.[1]

       The issue before the Court is whether there exists "cause" under § 362(d)(1) to grant relief from the automatic stay to evict the Debtor. The cause on which the Landlord relies is that the lease was terminated before the Debtor filed its bankruptcy petition. Courts in this district

---

[1] Under § 362(b)(10), if the Lease were properly terminated before the petition was filed, the stay would not be in place as to proceedings to evict the Debtor. However, the Landlord does not now seek a determination under subsection 362(b)(10) that the stay does not apply. Rather, assuming for purposes of argument that the stay is in effect, the Landlord seeks relief from the stay under subsection 362(d)(1).

have ruled that "[w]here a landlord has properly terminated a debtor's lease prior to bankruptcy the landlord is entitled to relief from stay as the debtor has no property interest in the leasehold." *In re Norwood Aviation, Inc.*, 47 B.R. 155, 157-58 (Bankr. D. Mass. 1985), aff''d sub nom *Bevilacqua v. Boston Metropolitan Airport*, 63 B.R. 68 (D. Mass. 1986). See also 11 U.S.C. § 365(c)(3) (trustee may not assume or assign a nonresidential lease of real property that "has been terminated under applicable nonbankruptcy law prior to the order for relief"). Accordingly, the issue before the court is whether the lease was terminated prepetition.

Although the hearing was nonevidentiary, the parties filed extensive affidavits and exhibits relating mostly to the lease termination issue. The parties also filed memoranda of law and the court heard oral argument. Given that the material facts concerning termination, or attempted termination, of the Lease are not in dispute, there is no need for an evidentiary hearing at this time.

In deciding whether the Lease was properly terminated prepetition, the Court must consider applicable state law. *In re Southcoast Exp., Inc.*, 337 B.R. 739 (Bank. D. Mass. 2006). See also *In re Appalachian Oil Co., Inc.*, 2009 WL 2843371 (Bankr. E.D. Tenn 2009) (applying state law to determine whether lease had been properly terminated prior to bankruptcy). Under Massachusetts statute, a commercial landlord may terminate a written lease "(i) in accordance with the provisions of the lease or (ii) in the absence of such lease provisions, by at least fourteen days notice to quit, given in writing to the tenant." M.G.L. c. 186, § 11A. Because there is a written lease and it specified the manner of terminating the lease for defaults, the determination of whether there was proper termination requires reference to the default and termination provisions of the Lease. Article XVI of the Lease, entitled "Landlord's Remedies," includes the following as Events of Default (among others): (a) "the failure by Tenant to pay any item of rental . . . continuing for five (5) days after notice specifying such failure;" and (b) "in the event of any failure by the Tenant to perform, fulfill or observe any other representation, warranty, or agreement by the Tenant set forth herein, continuing for thirty (30) days after notice

2

from the Landlord specifying such failure." Upon the occurrence of such Event of Default, the Landlord may "terminate this Lease immediately by (i) notice to Tenant or (ii) by the entry upon the Demised Premises[.]" According to the Lease at Article XVII, section 12, and this is critical, all "Notices" under the Lease "shall be in writing and shall be sent (i) by hand, (ii) by overnight courier, or (iii) by registered or certified mail, postage prepaid." Moreover, all Notices to the Tenant are to be "addressed to him at the address set forth on the first page of this Lease (or to such other address or addresses as may from time to time hereafter be designated by the Tenant by like notice)." The Debtor's address was identified as "Everest Crossing LLC, 101 Sawyer Avenue, Dorchester, MA 02125." The parties agreed that the Debtor never provided any notice of a change of that address. From this it follows that the Landlord could rely on it as a proper address for notice, even though there was undisputed evidence to the effect that the address at "101 Sawyer Avenue" was no longer associated with the Debtor or anyone associated with the Debtor. Indeed, under the Lease, the Landlord was required to provide notice at that address.

In this case the Landlord contends that it provided nineteen separate Notices of Default to the Debtor. See Motion, Exh. C. Five of the notices were dated July 2, 2009 and fourteen were dated July 8, 2009. By Affidavit of Raj Dhanda, the Landlord states that on July 8, 2009 it hand delivered the default notices to the Premises; and by the Affidavit of Karishma Dhungana, the Landlord states that on July 9, 2009 (for delivery on July 10, 2009) it sent the default notices by overnight mail to the address listed in the Lease as the Debtor's address for notice purposes.[2] At the hearing the Landlord agreed that the overnight delivery of the notices of default was not returned to the sender; from this fact arises the uncontested presumption that the notices of default were delivered to the address provided in the Lease on July 10, 2009. The Debtor also states that on July 3, 2009, it emailed six default notices to the Debtor and hand delivered the

---

[2] Response to Debtor's Opposition to Crimson Galeria Limited Partnership's Motion for Relief From The Automatic Stay, ¶ 2.

same six default notices to the Premises. *Id*. at ¶ 5. The Landlord does not contend that it delivered or attempted to deliver any of the July 3, 2009 default notices to the Debtor at the 101 Sawyer Avenue address.

As noted, under the Lease the Landlord could terminate the Lease with written notice to the Tenant after the expiration of the five (5) or thirty (30) day cure periods. Thus, in an attempt to terminate the Lease, on July 14, 2009, the Landlord hand delivered a Notice of Termination to the Debtor at the Premises and attempted to hand deliver the Notice to the Debtor at the 101 Sawyer Avenue address and at another Boston address that the Debtor's principal had provided in connection with his guarantee. The attempted termination, however, was to no avail because the Notice of Termination was premature and therefore ineffective. The Notices of Default sent by the Landlord each specifically stated that, for nonpayment of rent defaults, the Debtor had five days to pay the rent, i.e. to cure the defaults identified by the notices.[3] The Notices of Default were effectively delivered to the address stated in the Lease, 101 Sawyer Street, on July 10, 2009. The five-day cure period therefore expired on July 15, 2009. The Notice of Termination was delivered to the Debtor on July 14, 2009—only four days into the five-day cure period. The fact that the Notices of Default were emailed and hand delivered to the Premises before July 10, 2009 is irrelevant because the Lease exclusively defined the agreed method of delivering notices: notice to the Debtor at 101 Sawyer Street.

The Landlord was entitled to terminate the Lease in accordance with the provisions of the Lease, but to do so the Landlord was required to follow the procedures stated in the Lease, which it did not do. *See* M.G.L. ch. 186, § 11A (2006). *See also Tage II Corp. V. Ducas (U.S.) Realty Corp.*, 17 Mass. App. Ct. 664, 667 (1984) ("The tenant, as well as the landlord, is entitled to compliance with the written terms of the lease."); 2 Friedman On Leases, § 21.4 at 1331 (4th

---

[3] Motion for Relief, Exhibit C (the precise language used was as follows: "Please pay the above amount within 5 days of receipt of this letter. If you should fail to do so, Landlord will use all its rights and remedies under the Lease to collect the above stated amount and to exercise its other rights under the lease.") .

ed. 1997).

As to the motion for relief under 11 U.S.C. § 362(d)(1), the foregoing leads to the inescapable conclusion that the Landlord has not established the "cause" on which it relies: that the Lease was terminated prepetition. Therefore, the Motion for Relief is DENIED.

Date: September 17, 2009

_____
Frank J. Bailey
United States Bankruptcy Judge