## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | |
|---|---|
| **In re**<br><br>**EVEREST CROSSING, LLC,**<br><br>                    **Debtor** | **Chapter 11**<br>**Case No. 09-16664-FJB** |

### MEMORANDUM OF DECISION ON
### DEBTOR'S MOTION TO ASSUME LEASE

By the motion before the Court, the chapter 11 debtor, Everest Crossing, LLC ("the

Debtor"), seeks to assume its lease ("the Lease") of the nonresidential real property at 57 John

F. Kennedy Street, Cambridge, Massachusetts, out of which it operates its business, a

restaurant known as OM Restaurant and located in the Harvard Square section of Cambridge.

The landlord and counter-party to the lease, Crimson Galeria Limited Partnership ("the

Landlord"), opposes the motion, citing alleged defaults under the Lease.  This dispute boils

down to three issues: (1) whether the amount of that monetary default, which the Landlord

contends is $157,258 for common area and maintenance ("CAM") charges, includes the 2005

portion of these charges, which total $39,000 and which the Debtor contends the Landlord

either waived or is barred from enforcing because it did not bill the Debtor for them within the

time required by the Lease; (2) whether the Debtor has provided adequate assurance that it will

promptly cure the alleged monetary default under the Lease; and (3) whether the Debtor has

provided adequate assurance of future performance under the Lease.  After an evidentiary

hearing on the motion, the Court hereby enters the following findings and rulings, on the basis

of which the Court concludes that the Lease may be assumed.[1]

---

[1]  Under recent amendments to the Bankruptcy Code, and absent the consent of the
lessor, a debtor must assume a lease of nonresidential real property on or before (at most) 210
days after the commencement of the case.  Given that most debtors who need to assume a
lease are not ready to do so in the first months of a case, these motions tend to be filed at the
last minute and consequently to necessitate an evidentiary hearing and then a decision in an
unreasonably short time.  In this instance, circumstances conspired to require that the Court
decide the matter within twenty-four hours after the close of the evidentiary hearing.

The Debtor filed a voluntary petition for relief under Chapter 11 on July 15, 2009. It first

entered into the Lease with the Landlord in December 2004, completed the build-out of its

space during the following year, and opened for business on December 31, 2005. The

restaurant facility is itself is a work of art, and the restaurant as a whole has been highly

acclaimed, having received numerous awards and reviews of the very highest level, a truly

world-class restaurant. It enjoys strong patronage and a high degree of good will and support in

its community. This is due in no small part to the efforts and investment of its principal, Mr.

Solomon Chowdhury, whose resourcefulness and continuing commitment to the success of this

venture are clear. Mr. Chowdhury invested his savings of $1.5 million in the build-out and

establishment of OM.

Unfortunately, the Debtor's relationship with the Landlord has been strained; this has

been the principal source of its financial troubles and the cause of its bankruptcy filing. The

causes of these strained relations are three. First, the Debtor owes the landlord for CAM

charges dating back to 2007. (The debtor was first billed for CAM charges in 2007, but the

billed charges extend back as far as 2005.) Second, the Debtor, while not disputing that some

amount is due, honestly disputes the amounts of these charges and has had difficulty obtaining

from the landlord a suitable accounting. Third, though the Landlord, acting through its general

partner Mr. Raj Dhanda, was willing to work amicably with the debtor in the first years of their

relationship, Mr. Dhanda later indicated to Mr. Chowdhury that the Landlord would like to

acquire an ownership interest in the Debtor. Later, in May of 2009, Dhanda indicated to

Chowdhury that he would like for the Debtor to sell the restaurant to a third party who was

willing to pay the Landlord $1 million for this deal, of which the Landlord offered the Debtor a

small percentage, $75,000, plus forgiveness of the lease, for the debtor's acquiescence in this

plan. Mr. Chowdhury, who sees the investment of his ideas, efforts, and life's savings being

appropriated by the Landlord in this effort, has understandably resisted these efforts. So the

Debtor's woes are in part financial but not wholly so. It was shortly after the Debtor rebuffed this

2

latter effort that the Landlord served notices of default on the Debtor, precipitating the

bankruptcy filing.

At the time of the bankruptcy filing, the Landlord was attempting to terminate the Lease

on account of defaults, consisting mostly of alleged arrearages in CAM charges.  By a previous

ruling in this case, this Court determined that the Lease had not been terminated as of the

bankruptcy filing date.  The debtor disputes the amount of the CAM charges for all years, but for

purposes of the present motion, it disputes only the CAM charges for 2005, $39,000 of the

$157,258 arrearage that the Landlord contends must be cured as a condition of assumption of

the lease.

I do not have before me an objection to the Landlord's claim, so on this motion to

assume lease, the Court's task is not to adjudicate the cure component of the Landlord's claim

but simply to estimate the cure amount for present purposes.[2]  On the evidence adduced at the

evidentiary hearing, the Court concludes that the debtor is likely to prevail on its objection to the

2005 CAM charges.  Under the Article VI, section 2 of the Lease, the Landlord was obligated to

give the Debtor a statement of a particular year's CAM charges within 180 days of the end of

that calendar year or as soon as reasonably practicable thereafter.  It is undisputed that the

Landlord did not bill the debtor for 2005 CAM charges until May of 2007.  The Landlord made no

showing—did not even attempt to show—that it was not reasonably practicable to bill for the

CAM charges within the 180-day period or sooner than eleven months thereafter.  It follows that

no claim for the 2005 CAM charges is enforceable under the lease.  Also, in the alternative, the

long delay in sending notice of the 2005 CAM charges lends credence to Mr. Chowdhury's

testimony that, through Mr. Dhanda, the Landlord had agreed to waive the 2005 CAM charge.

---

[2]  The parties nonetheless urge the court to make a final determination on that arrearage at this juncture.  The Court declines to do so, not only because no objection to claim is presently before me, but also because the debtor has made clear that it's objection to the Landlord's claim is broader than that which has been presented as part of the present controversy, and therefore a final decision at this juncture would result in piecemeal adjudication of the claim.

Accordingly, for purposes of this motion, the cure amount is hereby fixed at $118,258.

Section 365(a) and (b)(1) of the Bankruptcy Code provide, in relevant part, that a debtor

in possession, exercising the powers of a trustee, may assume an unexpired lease if the debtor,

at the time of such assumption, "provides adequate assurance that [it] will promptly cure" any

monetary default (with exceptions not applicable here) and "provides adequate assurance of

future performance under such . . . lease."  11 U.S.C. § 365(a) and (b)(1)(A) and (C).  The

Debtor bears the burden of proof as to both adequate assurance issues.

The Debtor proposes to cure the arrearage over eighteen months out of operating

revenues and has submitted a budget under which it could reasonably accomplish that cure.  In

addition, to further assure such performance, Mr. Chowdhury's sister has given the Debtor

$30,000 to secure the Debtor's performance on this obligation, and a Mr. Ozgur Ylimac has

further promised to lend the Debtor $15,000 should this further sum be necessary to effectuate

the cure.  These amounts are over and above a $36,000 security deposit that the Landlord is

holding to secure performance under the Lease.  Especially in view of the fact that the Debtor's

budget is based on a cure amount of $157,000, which is a full one-third more than the actual

cure amount, the Court finds that the Debtor is likely to complete the cure on the proposed

schedule.  The Debtor's projections, as adjusted for the lesser cure amount, are realistic.[3]  In

combination with the $45,000 that has been pledged as security and the $36,000 security

deposit, the plan to repay over eighteen months constitutes adequate assurance of cure.

The Landlord contends that a cure within eighteen months is not the "prompt" cure that

the statute expressly mandates.  The Court disagrees.  There is no bright-line test as to what

constitutes "prompt" for all cases.  On the facts of this case, eighteen months is sufficient.  The

debtor is in the fifth year of the initial ten-year term of the Lease, and the lease is extendable for

two five year terms.  The Lease itself requires the payment of CAM charges not all at once but

_____

[3]  The contrary testimony of the Landlord's expert was not informed with information
about the Debtor's operation, which he conceded was critical; I give his testimony little weight.

4

in monthly installments over a year.  In addition, the precise amount of the default remains in

dispute, with large numbers in the balance, and may not be adjudicated or otherwise resolved

for some time.  On these facts, the proposed cure is prompt within the meaning of subsection

365(b)(1)(A).

The only remaining issue is whether the Debtor has provided adequate assurance of

future performance under the Lease.  The Debtor has provided adequate assurance.  The

Debtor has made substantial changes to its business in the seven months since its bankruptcy

filing, including by effectuating substantial savings and efficiencies in several areas, hiring a

new cook and booking manager, adjusting its pricing structure, and expanding its capacity.  Mr.

Chowdhury testified that although his business suffered in the fall of 2008, primarily through

cancelations occasioned by the economic collapse in that period, these bookings have begun to

pick up again.  Also, the Debtor has a plausible plan to acquire a new liquor license and sell its

present license at a substantial profit, a move that would, among other things, relieve the Debtor

of substantial monthly debt service on the present license.  It is true, as the Landlord notes, that

the Debtor has not yet filed a plan of reorganization; however, it is also true that the assumption

of the Lease and cure of the CAM charge arrearage are the biggest issues the debtor has to

face in this case.  And having surmounted these hurdles, debtor is now reasonably likely to

confirm a plan and continue performing under the Lease.  It has demonstrated the wherewithal

do so.

For these reasons, the Court will issue a separate order granting the motion to assume.

Date: February 24, 2010                            _____
                                                   Frank J. Bailey
                                                   United States Bankruptcy Judge